Ian C. Ballon (SBN 141819)
Ballon@gtlaw.com
Rebekah S. Guyon (SBN 291037)
GuyonR@gtlaw.com
**GREENBERG TRAURIG, LLP**
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: (310) 586-7700
Facsimile: (310) 586-7800

Attorneys for Defendant
Zale Delaware, Inc.

## UNITED STATE DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARISHA BYARS, individually and on behalf of similarly situated individuals,<br><br>               Plaintiff,<br><br>   v.<br><br>ZALE DELAWARE, INC., a Delaware corporation; and DOES 1 through 25, inclusive,<br><br>               Defendant. | Case No. 5:22-cv-01456-SB-SP<br>The Hon. Stanley Blumenfeld, Jr.<br><br>**DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>(Filed Concurrently with [Proposed] Order; Request for Judicial Notice; Declaration of Mark Limric in Support of Motion to Dismiss Pursuant To Rule 12(b)(1))<br><br>Date:     March 10, 2023<br>Time:    8:30 a.m.<br>Place:   Courtroom 6C |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 10, 2023 at 8:30 a.m., in Courtroom 6C of the above-captioned Court, located at 350 W. 1st Street, Los Angeles, California 90012, Defendant Zale Delaware, Inc. ("Zale") will and hereby does move to dismiss Plaintiff Arisha Byars's ("Byars" or "Plaintiff") First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of an Article III injury-in-fact and 12(b)(6) for failure to state a claim.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, the concurrently filed Declaration of Mark Limric in Support of Motion to Dismiss Pursuant to Rule 12(b)(1), all pleadings and filings in this matter, and upon such other oral or documentary materials as may be presented to the Court at or prior to the hearing on this Motion.

This motion is made following the conferences of counsel pursuant to C.D. Cal. LR 7-3 that occurred on January 20, 2023, January 27, 2023, and January 31, 2023.

DATED: February 3, 2023          GREENBERG TRAURIG, LLP


By      /s/ Ian C. Ballon
        Ian C. Ballon
        Rebekah S. Guyon
        Attorneys for Zale Delaware, Inc.

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND.............................................................................3

    A.    The Banter.Com Website ................................................................4
    B.    Plaintiff And Her Claims ................................................................4

III.  PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT .........5

    A.    Standards For Motions To Dismiss Pursuant To Rule 12(b)(1) ....................5
    B.    Constitutional Requirements For Standing .................................6
    C.    Plaintiff Has Not And Cannot Establish A Concrete Harm.........................7

        1.    The Complaint Does Not Establish Article III Standing. ....................7
        2.    Zale's Recording Of An Anonymous Communication Did Not Harm Plaintiff. ............................................10

IV.   PLAINTIFF HAS NOT STATED A PLAUSIBLE CLAIM ................................11

    A.    Standards For Motions To Dismiss Pursuant To Rule 12(b)(6) ..................11
    B.    CIPA § 631(a) Does Not Prohibit Zale From Recording Its Own Communications With Plaintiff. ...................................11
    C.    Plaintiff Does Not Plausibly Allege An "Interception" Under CIPA..........13
    D.    Plaintiff Has No Claim Under The First Clause of CIPA § 631(a) Because It Does Not Apply To Internet Communications On A Smartphone.................................................15
    E.    CIPA § 632.7 Only Applies To Communications Between Two Telephones........................................................15
    F.    Plaintiff's Consent Bars Her Claims. .........................................18

V.    CONCLUSION................................................................................................21

i
**TABLE OF CONTENTS**

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................10

*Brodsky v. Apple Inc.*,
    445 F.Supp.3d 110 (N.D. Cal. 2020)......................................................12, 14

*Bunnell v. Motion Picture Ass'n of Am.*,
    567 F.Supp.2d 1148 (C.D. Cal. 2007) .....................................................13

*Campbell v. Facebook, Inc.*,
    315 F.R.D. 250 (N.D. Cal. 2016)............................................................3, 20

*Drake v. Toyota Motor Corp.*,
    No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125 (C.D. Cal. Nov. 23, 2020).............8

*Ellsworth v. Schneider Nat'l Carriers, Inc.*,
    No. 5:20-CV-01699-SB-SP, 2021 WL 6102514 (C.D. Cal. Oct. 28, 2021).........6, 7, 8

*In re Google Asst. Priv. Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020)......................................................15, 17

*In re Google Inc.*,
    No. 13–MD–02430–LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...............19

*In re Google Inc. Gmail Litig.*,
    No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)..................20

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021)............................................2, 11, 12

*Harty v. West Point Realty, Inc.*,
    28 F.4th 435 (2d Cir. 2022) .......................................................................8

*I.C. v. Zynga, Inc.*,
    No. 20-CV-01539-YGR, 2022 WL 2252636 (N.D. Cal. Apr. 29, 2022).....................8

*Khachatourian v. Hacienda La Puente Unified Sch. Dist.*,
    572 F. App'x 556 (9th Cir. May 16, 2014)...................................................9

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ...............................................................3, 14

**TABLE OF AUTHORITIES**

*Laufer v. Mann Hosp., L.L.C.*,
   996 F.3d 269 (5th Cir. 2021) ........................................................................8

*Lindsay-Stern v. Garamszegi*,
   No. SACV 14-01970-CJC(DFMx), 2016 WL 11745948 (C.D. Cal. Oct. 13, 2016)..14

*Massie v. Gen. Motors LLC*,
   No. CV 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) ..........................2, 10

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021) ...............................................15, 17

*Matera v. Google Inc.*,
   No. 15-CV-04062-LHK, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ............14, 17

*Moledina v. Marriott Int'l, Inc.*,
   No. 222CV03059SPGJPR, 2022 WL 16630276 (C.D. Cal. Oct. 17, 2022)..........3, 18

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
   2016 WL 4886933 (S.D. Cal. Sept. 15, 2016)................................................18

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 938 (N.D. Cal. 2014) ..........................................................13

*Quigley v. Yelp, Inc.*,
   No. 17-CV-03771, 2018 WL 7204066 (N.D. Cal. 2018).................................13, 14

*Rahman v. Marriott Int'l, Inc.*,
   No. 8:20-cv-00654, 2021 WL 346421 (C.D. Cal. Jan. 12, 2021) ..............................8

*Rodriguez v. Google LLC*,
   No. 20-CV-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ........................13

*Rosenow v. Facebook, Inc.*,
   No. 19-cv-1297, 2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ..................................13

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ..........................................................................5

*Scott v. Breeland*,
   792 F.2d 925 (9th Cir. 1986) ..........................................................................5

*Shayler v. 1310 PCH, LLC*,
   51 F.4th 1015 (9th Cir. 2022) ..........................................................................1

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016)....................................................................................6

*Stoops v. Wells Fargo Bank, N.A.*,
   197 F. Supp. 3d 782 (W.D. Pa. 2016)..............................................................9

iii

**TABLE OF AUTHORITIES**

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
  315 F. Supp. 3d 1147 (C.D. Cal. 2018) ............................................... 12

*Tinsley v. Snyder*,
  922 F.3d 957 (9th Cir. 2019) ............................................................... 7

*Torres v. Nutrisystem, Inc.*,
  289 F.R.D. 587 (C.D. Cal. 2013) ........................................................ 18

*Tourgeman v. Collins Fin. Servs. Inc.*,
  755 F.3d 1109 (9th Cir. 2014) ............................................................. 8

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ............................................................. 2, 6, 7, 8

*Underhill v. Kornblum*,
  2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ................................... 14

*Warren v. Fox Fam. Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ............................................................. 5

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ............................................................. 5

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................... 9

**State Cases**

*People v. Black*,
  32 Cal.3d 1 (1982) ............................................................................. 16

*People v. Nakai*,
  183 Cal. App. 4th 499 (2010) .......................................................... 3, 19

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985) ..................................................................... 2, 11

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975) ............................................................... 11

*Smith v. LoanMe, Inc.*,
  11 Cal.5th 183 (2021) ........................................................... 16, 17, 19

*Warden v. Kahn*,
  99 Cal. App. 3d 805 (Ct. App. 1979) ................................................. 11

**Federal Statutes**

Federal Wiretap Act, 18 U.S.C. § 2510(4) ............................... 10, 13, 14

iv

**TABLE OF AUTHORITIES**

**State Statutes**

2022 Cal. Legis. Serv. Ch. 27 (S.B. 1272) ........................................................16

Cal. Pen. Code § 631.......................................... 1, 2, 3, 11, 12, 13, 14, 15, 16, 17, 18, 19

Cal. Pen. Code § 632 .......................................................................................16

Cal. Pen. Code § 632.7 ...........................................1, 3, 15, 16, 17, 18, 19

Cal. Pen. Code § 633 .......................................................................................16

Cal. Pen. Code § 633.02 ..................................................................................16

Cal. Pen. Code § 633.05 ..................................................................................16

Cal. Pen. Code § 633.5 ....................................................................................16

Cal. Pen. Code § 633.6 ....................................................................................16

Cal. Pen. Code § 633.8 ....................................................................................16

Cal. Pen. Code § 636 .......................................................................................16

Cal. Pen. Code § 637 .......................................................................................16

Cal. Pen. Code § 637.2 ....................................................................................16

Cal. Pen. Code § 638 .......................................................................................16

Cal. Pen. Code § 638.53 ..................................................................................16

Cal. Pen. Code § 638.54 ..................................................................................16

Cal. Pen. Code § 638.55 ..................................................................................16

**Rules**

Fed. R. Civ. P. 12(b)(1).....................................................................................5

Fed. R. Civ. P. 12(b)(6)...................................................................................10

**TABLE OF AUTHORITIES**

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION**

This suit is part of a campaign by Plaintiff's counsel to attempt to depict a customer's voluntary communications with an online chat feature as nefarious and unlawful "wiretapping" in violation of California law. Since July of this year, Plaintiff Arisha Byars' counsel has filed no less than one hundred thirteen (113) complaints with allegations that are nearly identical to those Byars asserts here. Byars herself is the named plaintiff in at least six (6) other lawsuits, five (5) of which she filed *before* filing suit against Sterling Jewelers (now Zale), and two (2) of which she filed *before* she claims to have even used Zale's chat feature, in all of which she makes <u>verbatim</u> identical allegations seeking relief under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a). But Byars remarkably claims that only *after* she chose to use the chat feature provided by Zale (and after she initiated two suits with <u>verbatim identical allegations</u>), did she discover that the chat was allegedly recorded or potentially shared with a third party for data analytics purposes. *E.g.*, FAC ¶¶ 12, 20; Request for Judicial Notice ("RJN"), Exs. 4-12.[1] "A hallmark of abusive . . . litigation is the use of form complaints containing a multitude of boilerplate allegations of varying merit." *Shayler v. 1310 PCH, LLC*, 51 F.4th 1015, 1018 (9th Cir. 2022).

Litigation tactics aside, Plaintiff's claims against Zale are wholly without merit. Plaintiff claims that she used her smartphone to visit the <u>www.banter.com</u> website (the "Website") and had a conversation with Zale. First Amended Complaint ("FAC") ¶ 18. Although she could see with her own eyes that any communication via the chat feature on the Website was written electronically as she typed—a function of the way the Internet works—she claims that she had no idea the conversation would allegedly be recorded, the basis for her claims under the CIPA §§ 631 and 632.7. Plaintiff further

---

[1]    Plaintiff amended her complaint in three of those cases, as she has done here, making identical allegations under CIPA § 632.7 and asserting the same cause of action under CIPA § 631(a). RJN, Exs. 10-12.

claims that Zale allowed an unidentified third-party to allegedly access a transcript of her chat with Zale in violation of CIPA § 631. But Plaintiff concedes that the transcripts from online chats are valuable customer service tools and useful for improving customer service interactions. (FAC ¶ 10). Plaintiff does not contend that any allegedly recording or sharing of her chat caused her any harm, whether to her privacy or otherwise. Plaintiff has not alleged an Article III injury in fact or any facts that would state a plausible claim. Her claims should be dismissed.

**First**, Plaintiff has not and cannot allege an Article III injury in fact necessary to maintain suit in federal court. The Supreme Court has made clear that an alleged procedural violation, such as a violation of CIPA, does not satisfy a plaintiff's burden to show federal standing. "[U]nder Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). Plaintiff alleges no harm apart from the bare violations of CIPA here. Nor is it possible for Plaintiff to show that Zale's alleged recording or use of her chat communication for customer service purposes would cause her any harm, since any transcript created from her communication with Plaintiff on the Website is completely anonymous and would not identify her unless she voluntarily provided her own identifying information, and she has no privacy interest in anonymous information. Declaration of Mark Limric ("Limric Declaration") ¶¶ 5-7; *Massie v. Gen. Motors LLC*, CV 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022).

**Second**, Plaintiff has not alleged any facts to show that Zale violated CIPA § 631. CIPA § 631 does not prohibit a party to a communication—as Plaintiff concedes Zale was here—from recording it. *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). Plaintiff's § 631 claim, therefore, depends upon a theory that Zale allegedly shared a transcript of her communication with a third-party without her permission. But apart from the conclusory allegation—not accepted as true—that Zale allowed third-party involvement in Plaintiff's chat, Plaintiff does not allege any facts to show that code, or software, or any technical means used by Zale to support its chat feature were anything other than a tool Zale used to support its own communication with her, which, again, is not actionable under § 631.

*Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021). Plaintiff's § 631 claim should be dismissed for the additional independent reason that Plaintiff does not allege that any allegedly unlawful recording or sharing by Zale occurred while her communications were "in transit" as opposed to after Zale received her communications on its servers supporting the Website, which is not actionable under § 631. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).

**Third**, Plaintiff's CIPA § 632.7 claim fails because under the plain language of the statute, as confirmed by its legislative history, the statute only applies to the alleged recording of a communication between two telephones, not a smartphone and a server supporting a website, as Plaintiff alleges here. Cal. Penal Code § 632.7(a).

**Fourth**, Plaintiff's consent is a complete bar to her claims. Plaintiff cannot plausibly allege that she did not know her communications with the chat feature would be recorded, since she could watch her communications being written electronically as it occurred when she voluntarily used the chat. RJN, Ex. 2. Consent under CIPA can be express or implied, and can be determined from the surrounding circumstances. *Moledina v. Marriott Int'l, Inc.*, 222CV03059SPGJPR, 2022 WL 16630276, *7 (C.D. Cal. Oct. 17, 2022). California courts have long held that by their very nature, a reasonable person should know that Internet chats are recorded. *People v. Nakai*, 183 Cal. App. 4th 499, 515 (2010). Plaintiff cannot plausibly allege that she did not know that online chats like the one on the Website may be recorded or used for customer service purposes, as she concededly was aware of the general practice from the six other lawsuits she filed against other retailers for the very same conduct, five of which she filed before filing her claims against Sterling Jewelers (and now Zale), and two of which she filed before she even claims to have used Zale's chat feature at all. Further, Zale's recording and use of online communications were expressly disclosed in Zale's Privacy Policy. *See Campbell v. Facebook, Inc.*, 315 F.R.D. 250, 266 (N.D. Cal. 2016).

For these reasons, the Complaint should be dismissed in its entirety.

## II.    FACTUAL BACKGROUND

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

**A. The Banter.Com Website**

Banter.com (the "Website"), operated by Zale Delaware, sells high quality fine jewelry that empowers customers to express and celebrate themselves through their accessories. RJN, Ex. 1. On the Website, visitors have the ability to communicate with a live Virtual Jewelry Expert for a consultation regarding jewelry purchases, or to ask product questions, schedule piercing at a Banter by Piercing Pagoda physical location, and obtain help with an order and other customer service needs. RJN, Ex. 1. Like any online chat, a customer can see his or her communications written into the chat as he or she communicates Zale. RJN, Ex. 2. Zale's Privacy Policy expressly discloses that Zale may collect the "content [of] information you provide, including photos and comments," and may share that information with "service providers that provide business, professional or technical support functions" and "analytic partners." RJN, Ex. 3, p. 1, 4.

**B. Plaintiff And Her Claims**

Plaintiff is a self-proclaimed "tester" and "consumer privacy advocate." FAC ¶ 16. Within the last six months, she has filed six other lawsuits in California alleging claims against online retailers that are __identical__ to the claims she asserted against Sterling Jewelers (now Zale). RJN, Exs. 4-12. Plaintiff claims that on an undisclosed date "within the statute of limitations period" she used her smart phone to have a "conversation with Defendant" by directing the Internet browser on her smart phone to the Website. FAC ¶ 18. Plaintiff alleges that—unbeknownst to her at the time—Zale recorded the communication and allowed a third-party to "secretly intercept (during transmission and in real time), eavesdrop upon, and harvest data from the transcripts of Defendant's chat communication . . . ." FAC ¶ 12. Although Plaintiff contends that she was unaware of the recording or alleged third-party involvement until after her conversation with Zale was completed, FAC ¶ 20, she concedes that she used the chat feature in the first place to "ensure that companies like Defendant abide by the strict privacy obligations imposed upon them by California law." FAC ¶ 16.

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiff does not claim that Zale's alleged recording or use of her conversation has caused her any harm. Rather, she concedes that transcripts created with online chat features are "gold mines of customer service," provide "valuable customer insight" and allow companies to identify "exact pain points" for their customers, all of which enables companies like Zale to improve customer experiences online. FAC ¶ 11. Although Plaintiff claims that it is possible that Website visitors may provide "private and deeply personal" information in the chat feature, she does not contend that she herself provided anything private or sensitive to Zale. FAC ¶ 12.

In the course of pre-filing conferences required by this Court and the local rules, Plaintiff's counsel has asserted that Plaintiff used the Website chat feature on July 26, 2022—several days *after* she filed *two complains with verbatim identical allegations* to her claims originally against Sterling here, alleging that website chat features allegedly recorded her communications in violation of California law. RJN, Exs. 4, 5; *see* Limric Decl. ¶ 4. Plaintiff's counsel also provided an email address belonging to Plaintiff. Limric Decl. ¶ 4. Zale searched its transcripts of chats from the Website by Plaintiff's name and email address, and located no chat transcripts that identify Plaintiff by her name or email address. *Id*. ¶¶ 5-7. Zale additionally searched by the date that Plaintiff claims to have used the chat feature, and no transcripts created on July 26, 2022 contain Plaintiff's information. *Id*. In other words, if Zale recorded Plaintiff's communication with the chat feature, it was completely anonymous to her, in addition to only being used to improve customer experiences on the Website.

## III.    PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT

### A. Standards For Motions To Dismiss Pursuant To Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) allows a litigant to seek dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Plaintiff, as "the party seeking to involve the jurisdiction of the federal court[,] has the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). "A

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

jurisdictional challenge under to Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In resolving a factual attack, a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Meyer*, 373 F.3d at 1039. In this posture, a court "need not presume the truthfulness of the plaintiff's allegations." *Id*. (citing *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000)).

### B. Constitutional Requirements For Standing

To establish "the irreducible constitutional minimum" of standing, plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id*. at 1548.

Under Article III, "an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). "Traditional tangible harms," such as physical and monetary harms, qualify as "concrete" injuries. *Id*. at 2204. So do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id*. But courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id*. at 2204. "[S]tanding is not dispensed in gross; rather plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 2208.

In *Ramirez*, the Supreme Court "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. "Article III grants federal courts the power to redress harms that defendants cause

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id*. Contending that a statutory violation is "of the type that [gives] rise to standing . . . misses the point of *TransUnion*"—the harm alleged must bear a 'close relationship' to the kind of harm long recognized by American law . . . ." *Ellsworth v. Schneider Nat'l Carriers, Inc.*, No. 5:20-CV-01699-SB-SP, 2021 WL 6102514, at *5 (C.D. Cal. Oct. 28, 2021) (Blumenfeld, J.) (quoting *Ramirez*, 141 S. Ct. at 2208-09) (dismissing complaint for lack of standing; "Plaintiff does not claim that the publication of the allegedly inaccurate information caused him to suffer any harm—reputational or otherwise. His harm is an injury in law"). This is even more so the case where, as here, the statutes at issue are state laws, which Congress plainly could never have intended to elevate to concrete harms for the purposes of creating federal jurisdiction.

### C. Plaintiff Has Not And Cannot Establish A Concrete Harm

1. <u>The Complaint Does Not Establish Article III Standing.</u>

Plaintiff's claims arise from Zale's alleged use of software supplied by a third-party to record her alleged "internet communication" with the Website's chat feature. FAC ¶¶ 12, 18, 20. Plaintiff does not allege what she allegedly communicated in the chat feature on Zale's website, only that the recording occurred without her consent. *Id*. ¶ 31. Plaintiff does not allege that she has suffered *any* harm as a result of the alleged recording. Under *Ramirez*, simply alleging the elements of a CIPA claim—the alleged recording of a communication without consent—is insufficient for Plaintiff to satisfy her burden of establishing Article III injury in fact. *Ramirez*, 141 S. Ct. at 2205; *see Ellsworth*, 2021 WL 6102514, at *5 (plaintiff did not establish injury in fact by alleging statutory violation of the FCRA because "Plaintiff does not claim that the publication of the allegedly inaccurate information caused him to suffer any harm—reputational or otherwise").

Plaintiff does not even attempt to argue that Zale's collection of her voluntary communication with it on its Website chat feature bears any relation to the sort of privacy harms traditionally recognized in American courts. *Ramirez*, 141 S. Ct. at 2204.

7

Although she alleges that it is possible that visitors may share "highly personal data with [Zale] via the website chat feature," FAC ¶ 14, she does not allege that she herself provided any such sensitive information, and harms that may be suffered by absent members of the putative class do not suffice for her own obligation to establish standing at the pleadings. *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019) ("when we measure a plaintiff's standing, regardless of whether the plaintiff sues individually or as class representative, we look concretely at the facts that pertain to that plaintiff"); *Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125, at *3 (C.D. Cal. Nov. 23, 2020) (Blumenfeld, J.) (standing inquiry only satisfied once "named plaintiff demonstrates her individual standing to bring a claim"). Her claim therefore arises from Zale's alleged recording and alleged subsequent sharing of her non-sensitive communications with Zale online, which is not analogous to a privacy harm traditionally recognized in American courts. *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1040 (N.D. Cal. 2022) (unauthorized disclosure of plaintiff's "basic contact information, including one's email address, phone number, or Facebook or Zynga username" not sufficient to confer Article III standing because the information is not "private" and all of it was "designed to be exchanged to facilitate communication and is thus available through ordinary inquiry and observation"); *see Rahman v. Marriott Int'l, Inc.*, No. SACV2000654DOCKES, 2021 WL 346421, at *1-2 (C.D. Cal. Jan. 12, 2021) (holding that contact information, gender, birth date, and loyalty account number "lack[ed] the degree of sensitivity required" for standing), *appeal dismissed sub nom. Arifur Rahman v. Marriott Int'l, Inc.*, No. 21-55112, 2021 WL 3628486 (9th Cir. July 19, 2021); *see also Ellsworth*, 2021 WL 6102514, at *5 (finding no injury in fact where plaintiff failed to allege the kind of harm "long recognized by American law").

Additionally, "[Plaintiff's] assumed status as an "[privacy] tester" does not absolve her of the need to show an injury in fact for standing purposes." *Laufer v. Mann Hosp., L.L.C.*, 996 F.3d 269, 273 (5th Cir. 2021); *see* FAC ¶ 16 ("Plaintiff is a 'tester' who works to ensure that companies like Defendant abide by the strict privacy obligations

8

imposed upon them by California law."). While "testers can have standing, . . . even testers have to show that they have suffered an Article III injury in fact." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022). To the extent Plaintiff cites *Tourgeman v. Collins Fin. Servs. Inc.*, 755 F.3d 1109 (9th Cir. 2014), for the proposition that "testers" may have a lesser burden of establishing Article III standing in the context of a statutory violation, FAC ¶ 17, that proposition is not good law post-*Spokeo* and *Ramirez* because in *Tourgeman* the Ninth Circuit found an Article III injury based on an "alleged violation of [a] statutory right" alone, which the Supreme Court rejected in *Ramirez*. 755 F.3d at 1116; *but see Ramirez*, 141 S. Ct. at 2213.

If anything, Plaintiff's "tester" status indicates that she was on notice that her communication with Zale Delaware would be recorded or used, and her privacy could not, therefore, have been invaded. As a "tester," Plaintiff has filed seven suits in the last six months alleging *near identical* wiretapping claims—five of which were filed before her claims against Sterling Jewelers (and now Zale), and <u>two of which were filed before she even claims to have used Zale's chat</u>—arising from her usage of the chat feature on commercial website. RJN, Exs. 4-12. It is not reasonable for Plaintiff to contend that her alleged communications on the Website were private, given her admitted knowledge— before she used Zale's chat—that interactions with an online chat feature are regularly recorded. "The plaintiff in an invasion of privacy action must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she <u>must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant</u>." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (emphasis added) (internal citations omitted); *see also Khachatourian v. Hacienda La Puente Unified Sch. Dist.*, 572 F. App'x 556, 558 (9th Cir. 2014) (teacher had no reasonable expectation of privacy in classroom and desk drawers where he was "on notice" that those areas could be searched); *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 800 (W.D. Pa. 2016) ("Because Plaintiff has admitted that her only purpose in using her cell phones is to file TCPA lawsuits, . . . Plaintiff was not required

to tend to unwanted calls . . . The Court therefore must reject Plaintiff's argument that she suffered an injury-in-fact because her privacy interests were violated." (internal quotations omitted)). Plaintiff's voluntary communications with numerous online chat features in the hopes that the communication may be recorded so that suit may follow is not consistent with any expectation of privacy in her communications on the Website. Her "tester" status is further evidence that she has not been harmed, and her claims must be dismissed.

2. <u>Zale's Recording Of An Anonymous Communication Did Not Harm Plaintiff.</u>

Factually, Plaintiff cannot allege a concrete harm from Zale's alleged recording of her communications because any communication she had with Zale did not identify her. Limric Decl. ¶¶ 5-7. The recent opinion in *Massie v. Gen. Motors LLC*, CV 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022), is instructive. There, plaintiffs alleged that General Motors used software to collect their "mouse movements, clicks, and keystrokes, producing video-accurate renders of real visits" to the website www.chevrolet.com, in violation of the federal Wiretap Act and its California analog. *Id.* at *1, *2. Defendants moved to dismiss these claims for lack of Article III standing because the data collected was anonymized. *Id.* at *4-5. The Court held that even if a wiretapping claim could be analogous to a common law invasion of privacy tort, "a claim of invasion of privacy requires an intrusion upon something over which a person has a reasonable expectation of privacy. 'Eavesdropping' on communications that do not involve personal information, personally identifiable information, or information over which a party has a reasonable expectation of privacy does not amount to a concrete injury." *Id.* at *5. Therefore, the Court held that the plaintiffs did "not have a reasonable expectation of privacy over anonymized data captured by the Session Replay software at issue here," and lacked an Article III injury. *Id.*

As in *Massie*, Zale has never recorded a communication that identifies Plaintiff by her name, email address, or any other information Plaintiff claims is associated with her. Limric Decl. ¶¶ 5-7. Plaintiff has no expectation of privacy in anonymous

10

communications with a commercial website. She lacks a concrete harm and her claims should be dismissed.

## IV.    PLAINTIFF HAS NOT STATED A PLAUSIBLE CLAIM

### A. Standards For Motions To Dismiss Pursuant To Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While factual allegations in the pleadings are assumed true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

### B. CIPA § 631(a) Does Not Prohibit Zale From Recording Its Own Communications With Plaintiff.

Plaintiff cannot maintain a claim against Zale under CIPA § 631(a) because Zale was a party to any communications that Plaintiff contends Zale recorded. CIPA "Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by *third parties*." *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985) (emphasis added) (citing *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975)). "*Only* a *third party* can listen to a conversation secretly . . . . By contrast, a party to a communication can record it (and is not eavesdropping when it does)." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) (emphasis added) (citing *Rogers*, 52 Cal. App. 3d at 897-99); *see also, e.g.*, *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (Ct. App.

1979) (Section 631 "has been held to apply only to eavesdropping by a third party and
*not to recording by a participant to a conversation*." (emphasis added)).

For example, in *Rogers*, the California Court of Appeals held that a city employee
could not be liable under § 631(a) for installing a "tape recorder jack" on his phone so he
could record conversations and "relay part of these conversations" to others, because
Section 631(a) does not prohibit "the recording of a conversation made by a participant
rather than a third party." 52 Cal. App. 3d at 896, 897, 898. In *Graham v. Noom*, the
court held that the operator of the website noom.com could not be liable for
eavesdropping under § 631(a) based on the use of software to record website interactions
without obtaining plaintiff's prior consent because the software merely supported the
website operator's own collection and analysis of customer communications to which it
was a party. *Graham*, 533 F. Supp. 3d at 832 ("FullStory is a vendor that provides a
software service that captures its clients' data, hosts it on FullStory's servers, and allows
the clients to analyze their data. . . . .[A]s a service provider, FullStory is an extension of
Noom.").

Here, Plaintiff concedes that she intended to communicate with Zale through its
online chat feature. FAC ¶ 18. Zale cannot be liable as a matter of law for recording its
own communication with Plaintiff. *Graham*, 533 F. Supp. 3d at 831. Her CIPA § 631(a)
claim, therefore, is limited to her allegation that Zale allowed "at least one independent
third-party vendor to secretly intercept . . . eavesdrop upon, and harvest data from the
transcripts of Defendant's chat communications . . . ." FAC ¶ 12. This wholly conclusory
allegation is not accepted as true and cannot support her claim under § 631. *Ticketmaster
L.L.C. v. Prestige Ent. W., Inc*., 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018) (dismissal
warranted where plaintiff makes conclusory allegations "without providing facts to
substantiate the claimed legal conclusions"). But even if the Court accepts this statement
as true—which it should not—Plaintiff has conceded that whatever software Zale
allegedly used to record her communications was under Zale's direction and used by Zale
only to improve customer service interactions. FAC ¶ 12 (referring to transcripts from

online chat features as "gold mines of customer service" and a source of "valuable customer insight"). Like the tape recorder in *Rogers* and the software used to record website interactions in *Graham*, Zale's use of software provided by a third-party to create transcripts from customer chats is simply a tool to facilitate its use of its own communications with Plaintiff, which CIPA § 631 does not prohibit. *See Graham*, 533 F. Supp. 3d at 832; *Brodsky v. Apple Inc.*, 445 F.Supp.3d 110, 126-27 (N.D. Cal. 2020) (dismissing Section 631 claim with prejudice where allegations "confirm that the only communications that [p]laintiffs argue Apple 'intercepted' are [p]laintiffs' communications to Apple," which Apple then passed on to a third party, and "Apple cannot intercept communications to which Apple is already a party").

### C. Plaintiff Does Not Plausibly Allege An "Interception" Under CIPA.

CIPA § 631(a) only prohibits the unauthorized "interception" of a communication, which is limited to the acquisition of the communication while it is "in transit." *See* Cal. Penal Code § 631(a). Thus, to be intercepted in violation of CIPA, the communication must be acquired during transmission, not while it is in electronic storage. *See Quigley v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. 2018) (CIPA § 631(a) prohibits only the acquisition of communications "while 'in transit'"). "Even if the storage phase is transitory and lasts only a few seconds, it is still considered electronic storage." *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1152 (C.D. Cal. 2007). An interception cannot occur unless defendants somehow "halt the transmission of the messages to their intended recipients." *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014).

Plaintiff alleges an "interception" in conclusory terms that does not satisfy *Iqbal* or *Twombly*. She uses the words "intercept" or "interception" eight times and posits that "Defendant also aided, abetted [sic] at least one third party to eavesdrop upon such conversations during transmission and in real time" FAC ¶ 31. But just "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [Defendant] is intercepting [Plaintiff's] data in transit." *Rodriguez v.*

*Google LLC*, No. 20-CV-04688-RS, 2022 WL 214552, at \*2 (N.D. Cal. Jan. 25, 2022) (dismissing CIPA § 631(a) claims for failure to state a claim); *see Rosenow v. Facebook, Inc.*, No. 19-cv-1297, 2020 WL 1984062, at \*7 (S.D. Cal. Apr. 27, 2020) (allegation that Yahoo violated the Federal Wiretap Act by using an "algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit and before placing them in electronic storage" conclusory and failed to state a claim). Plaintiff alleges no facts that would support an inference that any recording of her communications occurred while "in transit" or "in flight" as opposed to when they were received by Zale Delaware on its server supporting the Website, which is not an interception. *Adler v. Community.com, Inc.*, 2:21-CV-02416-SB-JPR, 2021 WL 4805435, at \*4 (C.D. Cal. Aug. 2, 2021) (Blumenfeld, J.) ("Defendant's alleged access of that communication upon the completion of its transmission to the proper number is not the sort of act contemplated by federal law.") (no unlawful interception where defendant allegedly acquired text message after it was received at phone number of intended recipient); *see Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ("[T]o be intercepted in violation of the Wiretap Act, [the communication] must be acquired during transmission, *not while it is in electronic storage*." (emphasis added))[2]; *Lindsay-Stern v. Garamszegi*, No. SACV 14-01970-CJCDFMx, 2016 WL 11745948, at \*4 (C.D. Cal. Oct. 13, 2016) ("Caselaw generally stands for the proposition that once an [electronic communication] has been received by the destination server, a communication becomes 'stored' *and contemporaneous interception is no longer possible*.").

Plaintiff has not *any* "alleged facts giving rise to an inference that [her] communications were intercepted while 'in transit.'" *Quigley*, 2018 WL 7204066, at \*4 (dismissing CIPA § 631 claims where plaintiff alleged "vague references" to the use of "surveillance systems" and "surveillance personnel" but did not "allege with particularity

---

[2]    The terms "intercept" under the Federal Wiretap Act, 18 U.S.C. § 2510(4), and "in transit" under CIPA, Cal. Penal Code § 631(a), are interpreted coextensively, and courts follow the same analysis for determining the scope of liability (apart from the Federal Wiretap Act's one-party consent provision) for both claims. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020).

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

how or when defendant became aware of his communications" allegedly acquired without permission). Her § 631(a) claim should be dismissed.

### D. Plaintiff Has No Claim Under The First Clause of CIPA § 631(a) Because It Does Not Apply To Internet Communications On A Smartphone

Plaintiff cannot maintain a claim against Zale under the first clause of CIPA § 631(a) because it only imposes liability where a defendant "intentionally taps, or makes any unauthorized connection . . . with any *telegraph or telephone* wire, line, cable, or instrument . . . ." Cal. Penal Code § 631(a) (emphasis added). Courts have uniformly held that a smartphone communicating over the Internet is not a "telephone" under the first clause of Section 631, and communications made via a smartphone's access to the Internet are not subject to that section of the statute. *See Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016) (first clause limited only to communications "passing over 'telegraph or telephone' wires," and thus did not "encompass[] email communications"); *In re Google Asst. Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) (holding communications made through Google Assistant software on a smartphone is  not subject to the first prong of Section 631 because it does not pass "over 'any telegraph or telephone wire, line, cable, or instrument.'"); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1135–36 (E.D. Cal. 2021) (finding no claim under the first clause of CIPA § 631(a) for mobile phone application "perform[ing] functions well beyond and unrelated to those of a telephone"). Therefore, Plaintiff's § 631 claim must be dismissed to the extent it is premised upon the first clause of the statute.

### E. CIPA § 632.7 Only Applies To Communications Between Two Telephones

Plaintiff's CIPA § 632.7 claim must be dismissed because the plain text of the statutes establishes that it only applies to communications between two telephones, not between a smartphone and a server supporting a website. CIPA § 632.7 provides:

> (a) Every person who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a

15

communication *transmitted between two cellular radio telephones*, a *cellular radio telephone and a landline telephone*, *two cordless telephones*, a *cordless telephone and a landline telephone*, or a *cordless telephone and a cellular radio telephone*, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment. If the person has been convicted previously of a violation of this section or of Section 631, 632, 632.5, 632.6, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000), by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

Cal. Penal Code § 632.7(a) (emphasis added). As the California Supreme Court has held, "[S]ection 632.7 responded to concerns that existing law did not prohibit the recordation of communications involving a *cellular or cordless telephone,*" as there was "no prohibition against recording a conversation transmitted *between* cellular or cordless phones," but it was "illegal to intercept or record a conversation *between* traditional telephones." *Smith v. LoanMe, Inc.*, 11 Cal.5th 183, 196 (2021) (quoting legislative record). "These concerns apparently owed to a sense that communications involving cellular or cordless telephones might represent 'radio' communications that [S]ection 632 expressly excludes from its purview. . . ." *Id.*

Any argument that CIPA § 632.7 should be expanded to communications between devices that are not telephones must be rejected. The Legislature has regularly amended CIPA since Internet usage became widespread in the 1990s, but it has not altered § 632.7's scope. *See, e.g.,* Cal. Pen. Code §§ 631 (amended 2022, eff. Jan. 1, 2023), 632 (amended 2016), 633 (amended 2018), 633.02 (added 2015), 633.05 (added 2011), 633.5 (amended 2017), 633.6 (same), 633.8 (amended 2011), 636 (same), 637 (same), 637.2 (amended 2016), 638 (added 2006), 638.53 (added 2015), 638.54 (added 2016), 638.55 (same). Moreover, the Legislature enacted an amendment to Section 632.7 that took

16

effect on January 1, 2023. 2022 Cal. Legis. Serv. Ch. 27 (S.B. 1272). But the Legislature did *not* add website or internet communications to the scope of § 632.7. Rather, the Legislature noted "[e]xisting law prohibits . . . intercepting or recording *any telephone communication, as specified*, without the consent of all parties," and proposed to "exempt from these provisions *any telephone company* engaged in the business of providing communications services and facilities, as specified." *Id.* Principles of statutory interpretation hold that "failure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes made in other respects, is indicative of an intention to leave the law unchanged in that respect." *People v. Black*, 32 Cal.3d 1, 9 (1982). The Court should not disturb clear legislative intent and interpret CIPA § 632.7 to apply outside of the plain language of the statute here.

Plaintiff has asserted that § 632.7 applies to Internet communications because "[b]y definition, Defendant's chat communications from its website are transmitted to website visitors by telephony," citing an Encyclopedia Britannica that describes the Internet as a "series of networks that connect devices around the world through telephone lines." FAC ¶ 19; *see* FAC ¶ 35. But courts applying other sections of CIPA that, like § 632.7, are limited to telephone communications have rejected the argument that the Legislature intended to circumscribe Internet communications in sections of CIPA that are expressly limited to telephone communications. For example, in *In re Google Asst. Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020), the Court held that the first clause in CIPA § 631(a) that "expressly requires that the unauthorized 'connection' be made with 'any telegraph or telephone wire, line, cable, or instrument'" did not apply to the alleged interception of communications on a smartphone device using the Google Assistant Software. *Id.* at 825-26 (emphasis added). In *Matera*, 2016 WL 8200619, at *18, Judge Koh likewise held that the first clause of CIPA § 631(a), which creates liability for any individual who "intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable or instrument" was limited to communications "passing over 'telegraph or telephone' wires, lines or cables," unlike the second clause of

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

§ 631(a), which applies to the interception of any communication over a wire, line or cable. *Id.* at *18 (emphasis added).

As in *In re Google* and *Matera*, the Court should apply CIPA by its express terms, which the Legislature carefully and specifically drafted in § 632.7 to only protect communications between two telephones. *Smith*, 11 Cal. 5th at 196. Here, Plaintiff alleges that she used the browser function on her smartphone to access Zale's Website. FAC ¶18. Courts have rejected the proposition that a smartphone, especially when used for its Internet browser function, is a telephone under CIPA. *Mastel*, 549 F. Supp. 3d 1129, 1135–36 ("Although iPhones contain the word 'phone' in their name, and have the capability of performing telephonic functions, they are, in reality, small computers. iPhones contain a complex operating system which allows the user to download mobile applications that perform functions well beyond and unrelated to those of a telephone. . . . While Pasteboard may enable an iPhone user to paste a phone number into the phone application, labeling it a 'telephone instrument' for this reason would be analogous to calling a pen and paper 'telephone instruments' because they allow a caller to write down a phone number before dialing.") (holding that the first clause of CIPA § 631(a) did not apply to a communication allegedly recorded from an iPhone). Even assuming that Plaintiff's smartphone, when used to access the Internet, is a telephone within the meaning of § 632.7, the server with which Plaintiff communicated that supported the Website is *not* a telephone under any stretch of that definition. Because Plaintiff has not alleged a communication between <u>two</u> telephones, § 632.7 does not apply and her claim should be dismissed.

### F. Plaintiff's Consent Bars Her Claims.

"Consent is an express element of a claim under [S]ection 632.7" and 631. *Moledina v. Marriott Int'l, Inc.*, No. 222CV03059SPGJPR, 2022 WL 16630276, *7 (C.D. Cal. Oct. 17, 2022); Cal. Penal Code § 631(a). Courts have recognized that because text communications are necessarily "recorded" by the recipient, a sender *consented* to that "recording" when the sender sent the message. Here, not only did Plaintiff send

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

written communications to Zale, she watched Zale record it before her eyes, and cannot reasonably allege that she was unaware of the recording given her conceded knowledge that online retailers retain webchat communications from the six other suits she filed alleging identical claims.

"Consent may be express or may be implied in fact from the surrounding circumstances indicating that the party to the call knowingly agreed to the surveillance." *Moledina*, 2022 WL 16630276, *7. "A party's awareness" they are being recorded can show they "impliedly consented to the recording." *Id*. "The critical question is whether the party whose communications were intercepted had adequate notice of the interception." *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 12-CV-01685-BAS (JLB), 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016). Participants who "actually expected the [communication] to be recorded" can be deemed to have consented by simply initiating the communication in the first place. *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 594 (C.D. Cal. 2013) (denying certification of Section 632.7 class due to individualized issues of consent).

California courts have recognized that "[I]nternet communications, such as e-mails and instant messages, are sent via a recorded format, i.e., writing." *People v. Nakai*, 183 Cal. App. 4th 499, 515 (2010). Internet chats are akin to "email services [that] are *by their very nature recorded on the computer of at least the recipient*, who may then easily transmit the communication to anyone else who has access to internet or print the communications." *Adler*, 2021 WL 4805436, at *5 n.4 (emphasis added). In the Section 632.7 context, the California Supreme Court has similarly observed that "[t]he circumstances involved with certain kinds of communications may lead to a reasonable inference that a party sending [the message] has consented to having it recorded by the intended recipient" because "recordation would be expected with a facsimile or text transmission, for example." *Smith*, 11 Cal. 5th at 194 n.4.

Plaintiff at least implicitly consented to any recording of her communications. Plaintiff alleges that she interacted with the chat feature on the Website. FAC ¶ 18. As

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

the Court may observe, any visitor who communicates with the chat feature on the Website can see the record of the communication being created during the course of the chat. RJN, Ex. 2. Plaintiff should have, therefore, expected that her text communication was recorded, precluding her claim under § 632.7 and for unauthorized recording under § 631. *Smith*, 11 Cal. 5th at 194 n.4.

Plaintiff similarly at least implicitly consented to any recording and sharing of her communications from her knowledge of the widespread industry practice of creating and using transcripts from online chat features. Plaintiff contends that as a "tester," she "works to ensure that companies like Defendant abide by the strict privacy obligations imposed upon them by California law." FAC ¶ 16. Plaintiff has filed no less than six lawsuits since July of this past year with identical allegations as those asserted against Sterling Jewelers (now Zale)—with five filed before filing her claims here—arising from a theory that her communications with an online chat feature were unlawfully intercepted. RJN, Exs. 4-12. She was, therefore, at least on notice that her communications may be recorded when she chose to use the chat feature on the Website. Moreover, Zale expressly disclosed in its Privacy Policy that it may collect the "content [of] information you provide, including photos and comments," and may share that information with "service providers that provide business, professional or technical support functions" and "analytic partners." RJN, Ex. 3, p. 1, 4. As a self-proclaimed "tester" who has filed seven identical cases, it is not plausible that she was unaware of any recording or use of her communication "until after the conversation was completed and additional, highly technical research was completed," as she alleges, especially when the very practice she complains of is expressly disclosed in Zale's Privacy Policy. *See* FAC ¶ 20. Because she was on notice that her communications may be recorded or shared from at least the other lawsuits she filed, five of which she filed before she filed her original complaint here, her consent to that conduct requires that her claims be dismissed. *See Campbell v. Facebook, Inc.*, 315 F.R.D. 250, 266 (N.D. Cal. 2016) ("Even if Facebook hid its practice, as long as users heard about it from somewhere and

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

continued to use the relevant features, that can be enough to establish implied consent.") (finding that individualized issues of consent to Facebook's scanning of messages precluded class certification where one of Facebook's alleged practices was reported from non-Facebook sources); *In re Google Inc. Gmail Litig.*, No. 13-MD-02430-LHK, 2014 WL 1102660, at *17 (N.D. Cal. Mar. 18, 2014) (holding implied consent may be found from other "sources from which email users could have learned of Google's interceptions other than Google's TOS and Privacy Policies").

## V.    CONCLUSION

Based on the foregoing, Zale respectfully requests that the Court grant Zale's Motion to Dismiss the First Amended Complaint and deny Plaintiff leave to amend.

DATED: February 3, 2023                GREENBERG TRAURIG, LLP


By    */s/* Ian C. Ballon
      Ian C. Ballon
      Rebekah S. Guyon
      Attorneys for Defendant Zale Delaware, Inc.

DEFENDANT ZALE DELAWARE, INC.'S NOTICE OF MOTION
AND MOTION TO DISMISS FIRST AMENDED COMPLAINT